# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 10-07273-JW |
| | Chapter 13 |
| Mildred Toomer, | **ORDER** |
| Debtor(s). | |

This matter comes before the Court upon a Motion for Relief from Stay ("Motion") filed by Wells Fargo Bank, as Trustee for Merrill Lynch Mortgage Investors Inc. ("Wells Fargo"). Mildred Toomer ("Debtor") objected to the Motion and a hearing was held. In accordance with Fed. R. Civ. P. 52, made applicable to these proceedings by Fed. R. Bankr. P. 7052 and 9014(c), and based upon the pleadings and testimony presented at the hearing, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Debtor filed the petition initiating this chapter 13 case on October 7, 2010.

2. Also on October 7, 2010, Debtor filed her schedules and statements. Schedule D indicates that Debtor's residence is worth $87,000.00 and is subject to Wells Fargo's secured claim of $59,026.00 and CitiFinancial's secured claim of $9,040.00. In addition to her employment income, Schedule I indicates that Debtor receives a monthly income contribution from her son in the amount of $750.00.

3. Debtor's chapter 13 plan was confirmed on January 5, 2011.

4. Debtor made her first six payments to the chapter 13 trustee, James M. Wyman ("Trustee"). However, Debtor fell behind in her payments to Trustee after losing her job, and as a result, Trustee filed a Motion to Dismiss for Non-Payment on August 3, 2011.

1

5. On August 22, 2011, Wells Fargo filed the Motion at issue pursuant to 11 U.S.C. § 362(d)(1) & (2) as a result of Debtor failing to make her direct post-confirmation mortgage payments. According to the Certification of Facts attached to the Motion, Debtor has over $20,000.00 of equity in her home beyond Wells Fargo's lien.

6. On September 6, 2011, Debtor filed an Objection to Wells Fargo's Motion, in which Debtor stated that she was willing and able to cure the post-confirmation default to Wells Fargo and asked for a twelve-month period to cure such default.

7. Also on September 6, 2011, Debtor filed a Motion for Moratorium requesting that the May 2011, June 2011, and July 2011 plan payments be suspended and added to the end of the plan. The Motion for Moratorium indicated that Debtor failed to make the plan payments because she lost her job but had recently gained employment.

8. At the hearing on the Motion, Debtor did not dispute that she had failed to pay her direct post-confirmation monthly mortgage payments from April through September. Debtor offered to cure the delinquency over a twelve-month period, but Wells Fargo refused to agree to a cure period longer than six months. Debtor claimed that she missed the payments as a result of losing her job as a home health care provider when her employer unexpectedly moved. However, Debtor stated that after actively seeking out new employment, she found a secure position as a bus driver that pays $585.00 biweekly and provides the possibility of earning additional income. Debtor testified that she could make all future plan and mortgage payments with the help of her son, if she were given a twelve-month cure period.

9. Debtor and her son, with the consent of Wells Fargo, filed affidavits after the hearing was held. Debtor's affidavit attested that immediately prior to filing her petition, she was anticipating employment as a school bus driver. Debtor listed employment as a school bus

2

driver on her original schedules and statements.  However, the affidavit states that Debtor was ultimately unable to obtain this employment and instead found work as a home health care provider.  The affidavit further states that Debtor lost the health care job when her employer unexpectedly moved out of the area at the end of April 2011.  Consequently, Debtor was laid off without advance notice.  Debtor attested in the affidavit that she was able to secure work as a school bus driver in August 2011 and acknowledged that her monthly plan, mortgage, and cure payments would total $1,473.03.[1]

10.    Debtor's son attested in his affidavit that he has been providing $750.00 in monthly support to his mother and plans to continue to provide her with sufficient support to ensure that she can pay her living expenses, trustee payments, and regular and cure mortgage payments.  Debtor's son also attested in his affidavit that he has the financial resources to continue to provide this support.

11.    On September 28, 2011, Trustee filed a proposed consent order regarding Debtor's Motion for Moratorium.  Trustee agreed to a moratorium, which would allow a deferral of the June 2011, July 2011, and August 2011 payments, add the missed payments to the end of the plan, and require Debtor to make an additional payment of $82.00 per month in addition to her regular plan payment for six months, beginning in September 2011 and ending in February 2012.

## **CONCLUSIONS OF LAW**

Wells Fargo seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) & (2).[2]  Section 362(d)(1) provides that a bankruptcy court shall grant a party relief from the stay

---

[1]    Debtor additionally stated in her affidavit that she anticipates earning additional income by renting out her home beginning in October 2011 for $800.00 per month.  There was no testimony about the possibility of this income presented at the hearing.

[2]    Further references to the Bankruptcy Code shall be by section number only.

3

"for cause, including the lack of adequate protection of an interest in property of such party in interest." Relief from stay is also to be granted under § 362(d)(2) if the debtor does not have equity in the property and "such property is not necessary to an effective reorganization." A decision to lift the stay under § 362 "is within the discretion of the bankruptcy judge." Robbins v. Robbins (In re Robbins), 964 F.2d 342, 345 (4th Cir. 1992).

**I.    Relief from Stay Under § 362(d)(1)**

"Cause" for purposes of § 362(d)(1) is not defined under the Code, and accordingly, bankruptcy courts are to determine when cause exists on a case by case basis. In re Robbins, 964 F.2d at 345; see also Americredit. Fin. Servs., Inc. v. Nichols (In re Nichols), 440 F.3d 850, 856 (6th Cir. 2006) ("[B]efore modifying or lifting a stay, a court should first weigh the equities by conducting a fact-specific analysis of the circumstances surrounding the default." (citing Mendoza v. Temple-Inland Mortg. Corp. (In re Mendoza), 111 F.3d 1264, 1271 (5th Cir. 1997))). The party requesting relief under § 362(d)(1) has the initial burden of proving that cause exists for relief from the automatic stay, but upon such a showing, the burden shifts to the debtor to demonstrate a lack of cause and the existence of adequate protection  See In re Davis, No. 10-2249-JW, 2010 WL 5173187, at *2 (Bankr. D.S.C. Oct. 12, 2010) (citing 11 U.S.C. § 362(g) and In re Henderson, 395 B.R. 893, 898 (Bankr. D.S.C. 2008). While cause has been found to exist when a debtor continually failed to make monthly payments under loan documents to an undersecured creditor both prior to and after filing a bankruptcy petition,[3] cause generally does not exist in the context of a chapter 13 case when there is a failure to make post-

---

[3] See, e.g., Equitable Life Assurance Soc'y of the U.S. v. James River Assocs. (In re James River Assocs.), 148 B.R. 790, 797 (Bankr. E.D. Va. 1992) (finding that cause existed to lift stay when there was a "small or nonexistent equity cushion" and a failure to make monthly payments for ten months pre-petition and seven months post-petition).

4

confirmation payments to an oversecured creditor due to circumstances beyond the debtor's control.  The Sixth Circuit concisely stated this proposition in In re Nichols:

> A majority of courts that have construed the "for cause" provision of section 362(d)(1) have found that a debtor's failure to make payments to the creditor after confirmation of the plan can constitute cause to modify or lift an automatic stay. The failure to make payments, standing alone, however, does not usually constitute "cause" to modify or lift the stay, especially where failure to pay resulted from circumstances beyond the debtor's control, such as illness or job loss. When there is still equity in the collateral, courts are not inclined to lift the stay.

Id. at 856 (citing In re Mathews, 208 B.R. 506, 511 n.6 (Bankr. N.D. Ala. 1997)); see also In re Mendoza, 111 F.3d at 1271 ("[F]ailure to make post-petition payments does not *ipso facto* establish cause for relief.").  The rationale behind this viewpoint is that a creditor that is adequately protected via an equity cushion, without more, should not automatically be given relief from stay if a debtor misses a post-confirmation payment.  See In re Mathews, 208 B.R. at 510–511.[4]  However, a debtor's failure to cure a post-petition default within a reasonable amount of time can constitute cause for granting relief from stay.  See, e.g., id. at 511–12 ("If [debtor] cannot cure his post-petition default within a reasonable time and at the same time make his currently monthly mortgage payments as those payments become due, 'cause' for relief from stay under section 362(d)(1) may exist."); E.F. Hutton Mortg. Corp. v. Williams (In re Williams), 68 B.R. 442, 443 (Bankr. M.D. Ga. 1987) (finding that in the event of a significant post-petition default by the debtor and no likelihood of cure, cause for relief from stay exists).

Considering the above referenced authority, this Court concludes that Wells Fargo has not shown that cause exists to lift the stay pursuant to § 362(d)(1).  Debtor was making her plan payments to Trustee as well as her regular mortgage payments directly to Wells Fargo before she unexpectedly lost her job.  In the months following, Debtor was unable to make her plan or

---

[4] For an extensive list of cases denying oversecured creditors relief from stay when post-confirmation payments were not made, see Mathews, 208 B.R. at 511 n.6 .

mortgage payments but actively sought out new employment. Debtor recently obtained a new job and indicates an ability to resume making payments to Trustee and Wells Fargo as well as to cure her post-confirmation default. In order to prevent her case from being dismissed, Debtor filed a Motion for Moratorium, to which Trustee has agreed. At no point during Debtor's case has there been any claim that Debtor acted in bad faith, and this Court found Debtor's testimony to be credible. Most importantly, it is undisputed that Debtor has over $20,000.00 of equity in the property securing Wells Fargo's mortgage.

This Court additionally finds Debtor's proposed twelve-month cure period to be reasonable under the circumstances of this case. Given Debtor's current income and Debtor's son's affidavit, which attested to his ability to provide her with financial assistance, Debtor has a reasonable chance to cure the post-confirmation default over a twelve-month period. Conversely, a six month cure period would all but guarantee that Debtor would again default on her post-confirmation mortgage payments. This Court will grant the twelve-month cure period on the condition that should Debtor fail to make any future cure or regular monthly mortgage payments to Wells Fargo, the stay can be terminated without a further hearing.

## II.    Relief From Stay Under § 362(d)(2)

The parties do not dispute that Debtor has equity in the property securing Wells Fargo's mortgage. Therefore, relief from stay under § 362(d)(2) is hereby denied for the reason that such relief can only be granted if the debtor does not have any equity in the property. See § 362(d)(2)(A).

## **CONCLUSION**

Based on the findings herein, this Court denies Wells Fargo's Motion upon the following conditions: In addition to resuming regular direct monthly mortgage payments to Wells Fargo,

6

Debtor is to cure her post-confirmation mortgage default over the twelve month period beginning in October 2011, by making twelve equal payments directly to Wells Fargo.[5] The October cure payment shall be due within 10 days from the entry of this order. All other cure payments are due on the first of the month. Debtor is also to resume her regular plan payments to Trustee pursuant to the moratorium agreement. Should Debtor fail to make any of the payments to Wells Fargo described above within 20 days from their due date, upon an *ex parte* showing by affidavit of that default and the submission of a proposed order, Wells Fargo shall be entitled to relief from the stay so that it can proceed with its state court remedies against its security, including making demand for payment of the amount due. This *ex parte* relief provision shall remain in effect until October 15, 2013.

    **AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**10/05/2011**



*/s/ John E. Waites*

Chief US Bankruptcy Judge
District of South Carolina

Entered: 10/05/2011

---

[5] Counsel for the parties should confer in order to determine the exact amount of the monthly cure payment and should ensure that Debtor is advised of the amount determined. In the event the parties are unable to agree to this amount, they should advise the Court.

7